2006R00100/SBK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA      :        Hon.

    v.      :        Criminal No. 07-_876(mₗc)_

PHILIP N. BURGESS, JR. &      :        26 U.S.C. §§ 7201, 7202 & 7212
STEPHEN R. PARRISH               18 U.S.C. § 2

### INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting in Newark, charges:

### COUNT 1
### OBSTRUCTING AND IMPEDING THE DUE
### ADMINISTRATION OF THE INTERNAL REVENUE LAWS
### 26 U.S.C. § 7212(a) & 18 U.S.C. § 2
### (Philip N. Burgess, Jr.)

1.    At various times relevant to this Indictment:

### Defendant and The Burgess Companies

a.    Defendant **PHILIP N. BURGESS, JR.** ("**BURGESS**") owned,

controlled, and served as an officer of companies that performed electrical contracting services,

sold computer hardware, and licensed computer software, among other things (collectively, "the

Burgess Companies"). The Burgess Companies, which operated in New Jersey, Georgia,

Massachusetts, the Cayman Islands, and elsewhere, included: AFAB Employee Services, Inc.

("AES"), AFAB International, Ltd. ("AFAB"), Bristol Employee Services Ltd. ("BES"), Bristol

Investments Ltd. ("BRISTOL"), Burgess Electrical Contractors, Inc. ("BEC"), Gigabyte

Distribution Corporation ("GIGABYTE"), Marra Holdings Ltd. ("MARRA"), Microbilt

Corporation ("MICROBILT"), National Information Bureau, Ltd. ("NIB"), Westminster

Engineering Company ("WEC"), and Westminster National Capital Company, Inc. ("WNCC").

## Employment Taxes and Trust Fund Recovery Penalties

b.       Pursuant to federal law, employers were required to withhold Social Security, Medicare and income taxes regularly from the paychecks of their employees, and to pay these withheld amounts ("Trust Fund Taxes") directly to the Internal Revenue Service ("IRS") on behalf of their employees. Employers were also required to calculate and pay corporate payroll taxes ("Payroll Taxes") based on the total wages paid to employees. ("Trust Fund Taxes" and "Payroll Taxes" collectively will hereinafter be termed "Trust Fund and Payroll Taxes").

c.       Every three months, employers were required to report to the IRS on Employer's Quarterly Federal Tax Returns ("Forms 941") the Trust Fund and Payroll Taxes they had withheld and paid during the previous quarter. Employers were also required to issue IRS Forms W-2 to their employees that stated the amounts withheld from employee wages.

d.       In certain instances, where companies willfully failed to pay over Trust Fund Taxes withheld from employee wages, federal law permitted the imposition of "Trust Fund Recovery Penalties" against the person or persons who were responsible for the failure to pay. Trust Fund Recovery Penalties made such individuals personally responsible for payment of the unpaid Trust Fund Taxes.

## The Charge

2.       From at least as early as in or about October 1986 through on or about December 31, 2005, defendant

### PHILIP N. BURGESS, JR.

did knowingly and willfully engage in a scheme to corruptly obstruct and impede, and endeavor to obstruct and impede, the due administration of the internal revenue laws, that is, to avoid

- 2 -

paying Trust Fund and Payroll Taxes, individual income taxes, and penalties that he owed to the IRS personally and on behalf of the Burgess Companies.

## BURGESS' SCHEME TO OBSTRUCT AND IMPEDE THE PAYMENT OF TAXES

3. **BURGESS** caused more than $2.3 million in Trust Fund Taxes to be withheld from the wages of Burgess Companies employees and failed to pay those amounts over to the IRS.

4. **BURGESS** failed to pay over to the IRS more than $900,000 in Payroll Taxes on the wages paid to those employees.

5. **BURGESS** took steps to evade the assessment and payment of Trust Fund and Payroll Taxes on other payments made to Burgess Companies employees by:

      a.    Paying certain Burgess Companies workers "off the books" and failing to report those payments to the IRS; and

      b.    Engaging in an employee leasing scheme that involved moving Burgess Companies employees from one Burgess Company to another.

6. **BURGESS** diverted money from the Burgess Companies to pay approximately $1,000,000 in personal and household expenses for himself and for his family members. **BURGESS** subsequently failed to report any of this amount on his individual income tax returns.

7. Because of **BURGESS'** failure to pay over the Trust Fund Taxes withheld from Burgess Companies employee salaries, the IRS imposed Trust Fund Recovery Penalties against **BURGESS**. **BURGESS** took steps to conceal assets from the IRS to avoid having those assets seized to satisfy the outstanding taxes and penalties that **BURGESS** and the Burgess Companies

- 3 -

owed. These steps included:

    a.    Transferring personal and business assets into the names of family members, trusts, and off-shore entities;

    b.    Making false statements to IRS Collections Division personnel concerning his personal income, assets he owned and controlled, and the Burgess Companies' compliance with their tax obligations; and

    c.    Transferring money among the Burgess Companies' bank accounts to maintain low balances in accounts that **BURGESS** believed the IRS might attempt to seize in order to satisfy outstanding tax liabilities.

8.    Among the means and methods **BURGESS** used to carry out the aforementioned scheme were those described in paragraphs 9 through 55 below.

## BURGESS' REPEATED FAILURES TO PAY
## TRUST FUND AND PAYROLL TAXES, INCOME TAXES, AND PENALTIES

### BURGESS ELECTRICAL CONTRACTORS, INC. ("BEC") (1986-1989)

9.    Beginning at least as early as in or about October 1986, **BURGESS** was the Vice President and Treasurer of BEC, an electrical contracting company with offices located in Massachusetts. **BURGESS** was responsible at BEC for overseeing the accounting, collection, and payment of Trust Fund and Payroll Taxes.

10.    Between in or about October 1986 and in or about June 1988, BEC failed to pay to the IRS approximately $325,000 in Trust Fund and Payroll Taxes.

11.    On or about May 19, 1988, and again on or about May 29, 1989, the IRS imposed

- 4 -

Trust Fund Recovery Penalties totaling approximately $229,000 against **BURGESS** personally based on BEC's unpaid Trust Fund Taxes.

12. Despite the IRS' attempts to collect these Trust Fund Taxes, Payroll Taxes, and Trust Fund Recovery Penalties, **BURGESS** and BEC failed to pay.

### GIGABYTE DISTRIBUTION CORPORATION ("GIGABYTE") (1989-1991)

13. Beginning at least as early as in or about October 1989, **BURGESS** was the Vice President and Treasurer of GIGABYTE, a computer distribution company located in Massachusetts. **BURGESS** was responsible at GIGABYTE for overseeing the accounting, collection, and payment of Trust Fund and Payroll Taxes.

14. Between in or about October 1989 and in or about June 1991, GIGABYTE failed to pay to the IRS approximately $22,000 in Trust Fund and Payroll Taxes.

15. On or about September 27, 1993, the IRS imposed a Trust Fund Recovery Penalty in the approximate amount of $11,500 against **BURGESS** personally based on GIGABYTE's unpaid Trust Fund Taxes.

16. Despite the IRS' attempts to collect these Trust Fund Taxes, Payroll Taxes, and Trust Fund Recovery Penalties, **BURGESS** and GIGABYTE failed to pay.

### NATIONAL INFORMATION BUREAU LTD. ("NIB") (1996-2000)

17. Between in or about April 1996 and in or about September 1999, **BURGESS** controlled and owned shares of NIB, a software licensing company with offices located in New Jersey. At NIB, **BURGESS** oversaw the accounting, collection, and payment of Trust Fund and Payroll Taxes.

18. During that period, NIB failed to pay to the IRS approximately $200,000 in Trust

- 5 -

Fund and Payroll Taxes.

19.     On or about June 9, 2000, the IRS imposed a Trust Fund Recovery Penalty in the approximate amount of $201,000 against **BURGESS** personally based on NIB's unpaid Trust Fund Taxes.

20.     Despite the IRS' attempts to collect these Trust Fund Taxes, Payroll Taxes, and Trust Fund Recovery Penalties, **BURGESS** and NIB failed to pay.

        **BURGESS'** Outstanding Tax Liabilities as of June 2000

21.     By on or about June 9, 2000, as a result of his and the Burgess Companies' repeated failures to pay monies owed to the IRS, **BURGESS** was personally responsible for the payment of more than $440,000 in Trust Fund Recovery Penalties.

22.     As of that date, as a result of failing to pay certain individual income taxes for the tax years 1993 through 1996, **BURGESS** also owed the IRS approximately $80,000 in unpaid individual income taxes.

23.     In an effort to evade the payment of these amounts, and to evade future payments of new tax liabilities, **BURGESS** engaged in the series of efforts described below to further obstruct and impede the administration of the internal revenue laws.


## THE EMPLOYEE LEASING SCHEME

24.     As part of his efforts to obstruct and impede the administration of the internal revenue laws, **BURGESS** fraudulently used his employee leasing companies AES and BES to avoid paying Trust Fund and Payroll Taxes to the IRS.

Leasing Companies

25.     At all times relevant to this Indictment, AES and BES were employee leasing companies ("Leasing Companies") owned by **BURGESS** that purported to sell payroll and benefits administration services to other Burgess Companies.  As part of the scheme to obstruct and impede, **BURGESS** transferred certain Burgess Companies employees to these Leasing Companies, which then became the "employers" that paid salaries to these workers.  The Leasing Companies thus became responsible for withholding and paying over to the IRS Trust Fund and Payroll Taxes on behalf of these workers.

26.     The Leasing Companies purported to lease these workers back to the other Burgess Companies.  This relationship would have required **BURGESS** to transfer money to the Leasing Companies to fund the Burgess Companies workers' salaries and the resulting Trust Fund and Payroll Taxes.  As described below, however, **BURGESS** failed to transfer these monies.  Instead, he purposefully left the Leasing Companies without enough money to pay Trust Fund and Payroll Taxes over to the IRS.

AFAB EMPLOYEE SERVICES, INC. ("AES") (1999-2002)

27.     At all times relevant to this Indictment, **BURGESS** controlled AES' bank accounts and approved the issuance of all AES paychecks.  **BURGESS** was also responsible for collecting, accounting for, and paying over Trust Fund and Payroll Taxes to the IRS on behalf of AES and its employees.

28.     Between on or about April 1, 2000 and on or about December 31, 2002, **BURGESS** caused AES to pay wages to workers at other Burgess Companies.  **BURGESS** also caused AES to issue IRS Forms W-2 to these workers which indicated that Trust Fund Taxes had

- 7 -

been withheld on their behalf.

29.     During this time period, **BURGESS** signed and caused to be filed quarterly Forms 941 stating that AES owed the IRS approximately $1.85 million in Trust Fund and Payroll Taxes as a result of paying wages to AES' employees.

30.     **BURGESS**, however, never transferred the approximately $1.85 million in Trust Fund and Payroll Taxes to AES. Instead, **BURGESS** only transferred enough money from the other Burgess Companies to pay the AES employees their net salaries (i.e., "take-home" pay) and to cover other non-IRS expenses.

31.     During the period between on or about April 1, 2000 and on or about March 31, 2003, **BURGESS** directed AES to pay only approximately $7,000 of the approximately $1.85 million that it owed to the IRS.

32.     Beginning in or about October 2002, the IRS contacted **BURGESS** in an attempt to collect AES' unpaid Trust Fund and Payroll Taxes.

33.     Shortly thereafter, in an effort to avoid paying to the IRS the Trust Fund and Payroll Taxes that AES owed, **BURGESS** caused AES to stop paying salaries and established a second Leasing Company – BES – to pay the salaries that AES had been paying to Burgess Companies workers.

### BRISTOL EMPLOYEE SERVICES LTD. ("BES") (2003-2005)

34.     In or about January 2003, BES, as successor to AES, had the same operations and nearly all of the same employees that AES had. BES, however, initially had none of AES' Trust Fund and Payroll Tax liabilities.

35.     At all times relevant to this Indictment, **BURGESS** controlled BES' bank

- 8 -

accounts and approved the issuance of all BES paychecks. **BURGESS** was also responsible for collecting, accounting for, and paying over Trust Fund and Payroll Taxes to the IRS on behalf of BES and its employees.

36.     Between on or about January 1, 2003 and on or about March 31, 2005, **BURGESS** caused BES to pay wages to workers at other Burgess Companies. **BURGESS** also caused BES to issue IRS Forms W-2 to these workers which indicated that Trust Fund Taxes had been withheld on their behalf.

37.     During this period, **BURGESS** also signed and caused to be filed quarterly Forms 941 stating that BES owed approximately $1.5 million in Trust Fund and Payroll Taxes to the IRS as a result of paying wages to BES' employees.

38.     **BURGESS**, however, never paid over the approximately $1.5 million in Trust Fund and Payroll Taxes that BES owed to the IRS. **BURGESS** instead transferred only enough money to BES to pay the BES employees their net salaries and to cover other non-IRS expenses.

39.     During the period between January 1, 2003 and on or about March 31, 2005, **BURGESS** caused BES to pay over to the IRS only approximately $200,000 of the approximately $1.5 million in Trust Fund and Payroll Taxes that BES owed to the IRS. **BURGESS** directed the payment of most of that $200,000 only after IRS representatives questioned **BURGESS** in or about February 2005 about the relationship between AES and BES.

### UNREPORTED PAYMENTS TO BURGESS COMPANIES EMPLOYEES

40.     In or about 1999 and thereafter, in furtherance of the scheme to impede and obstruct the administration of the internal revenue laws, **BURGESS** agreed with K.H. and

**STEVEN R. PARRISH**, who is named as a defendant in Counts 24 through 28 of this Indictment, that the Burgess Companies would pay each of them some or all of their wages in amounts that would not be reported to the IRS ("Off the Books Payments").

41.     The purpose of the agreements was to enable **BURGESS** to avoid paying Trust Fund and Payroll Taxes on the Off the Books Payments, and also to enable K.H. and **PARRISH** to avoid paying personal income taxes on those amounts.

42.     Between at least as early as in or about September 1999 and on or about November 25, 2005, **BURGESS** caused AES, AFAB, BRISTOL, and WNCC to issue Off the Books Payments to K.H (or to others for his benefit) totaling approximately $250,000. At **BURGESS'** direction, AES, AFAB, BRISTOL, and WNCC did not report these amounts to the IRS – either on Forms W-2 (reporting compensation paid to employees) or Forms 1099 (reporting amounts paid to subcontractors).

43.     Between at least as early as on or about January 1, 2000 and on or about December 31, 2005, **BURGESS** caused AES, AFAB, BES, and BRISTOL to issue Off the Books Payments to **PARRISH** totaling more than $500,000. At **BURGESS'** direction, AES, AFAB, BES, and BRISTOL did not report these amounts to the IRS – either on Forms W-2 or 1099.

## USE OF THE BURGESS COMPANIES TO PAY PERSONAL EXPENDITURES

44.     During the same period that **BURGESS** failed to pay over Trust Fund and Payroll Taxes and issued the Off the Book Payments, he was also diverting money from the Burgess Companies to pay his and his family's personal expenses. **BURGESS** failed to declare these

amounts on his individual income tax returns.

45.     During the calendar years 2000 through 2004, inclusive, **BURGESS** diverted money from AFAB, BRISTOL, MARRA and WNCC to pay for approximately $1,000,000 in goods, services, and property that were for **BURGESS**' personal benefit or for the benefit of his family members ("Personal Expenditures").

46.     **BURGESS** failed to report the Personal Expenditures as income on his 2000, 2001, 2002, 2003, and 2004 individual income tax returns.

47.     The Personal Expenditures that **BURGESS** caused AFAB, BRISTOL, MARRA, and WNCC to make included, among others:

a.      Between on or about June 30, 2000 and on or about August 15, 2000, approximately $238,000 diverted from AFAB and WNCC to pay for the purchase of **BURGESS**' Princeton, New Jersey residence.

b.      Between on or about July 12, 2001 and on or about December 24, 2004, approximately $199,000 in payments directed from WNCC to pay the mortgage on **BURGESS**' Princeton, New Jersey residence.

c.      On or about November 7, 2003 and November 21, 2003, two wire transfers from MARRA totaling approximately $50,000 to Company CUI in payment for a two-week charter of the 72-foot motor yacht LYSANDRA. **BURGESS**, his wife, and his two minor children vacationed on LYSANDRA in the Carribean Sea between on or about December 28, 2003 and on or about January 11, 2004.

d.      On or about December 4, 2003 and January 4, 2004, two checks from AFAB totaling approximately $6,900 to Company CSJ of St. John, United States Virgin Islands.

Company CSJ received payment for a catered beach party on St. John celebrating the renewal of the wedding vows of **BURGESS** and his wife, as well as for the transport by boat of hair and make-up stylists to and from the motor yacht LYSANDRA on the day of the party.

        e.      Between on or about May 7, 2003 and on or about November 19, 2003, approximately $38,000 in payments by WNCC to Company NPS for the installation of an approximately 500 square foot in-ground pool at **BURGESS'** residence.

        f.      Between on or about July 7, 2004 and on or about July 21, 2004, approximately $5,200 in payments by AFAB directed to Company MSC for a catered first birthday party for one of **BURGESS'** children.

48.    During the time that **BURGESS** caused the Burgess Companies to pay for the Personal Expenditures, **BURGESS** owed the IRS approximately $520,000 in unpaid personal income taxes and Trust Fund Recovery Penalties as described above in paragraphs 21 and 22.


## CONCEALING OF ASSETS

49.    **BURGESS** also evaded the collection of the taxes that he and the Burgess Companies owed by concealing assets from the IRS.

50.    In or about April 2000, **BURGESS** caused his Princeton, New Jersey residence to be purchased for approximately $725,000 in the name of his wife, M.B., using WNCC, BRISTOL, and AFAB monies to fund the transaction.

51.    In or about May 2001, shortly after IRS representatives told a Burgess Companies representative that the IRS was looking into whether **BURGESS** was holding assets in the names of other people, **BURGESS** caused ownership of his Princeton, New Jersey residence to be

- 12 -

transferred from his wife's name to a trust benefitting **BURGESS**, his wife, and his minor children.

52.    **BURGESS** also caused Burgess Companies assets that could otherwise have been used to pay individual income taxes, Trust Fund and Payroll Taxes, and Trust Fund Recovery Penalties to be deposited into MARRA and BRISTOL bank accounts at Cayman National Bank and Bank of Butterfield, two banks located in the Cayman Islands.

53.    As stated above in paragraphs 30 and 38, **BURGESS** also failed to transfer money from the other Burgess Companies to AES and BES – the Leasing Companies that owed the IRS approximately $3.35 million in unpaid Trust Fund and Payroll Taxes. By keeping Burgess Companies money out of AES and BES, **BURGESS** prevented the IRS from seizing such assets in satisfaction of AES and BES' obligations.

## FALSE AND MISLEADING STATEMENTS

54.    **BURGESS** also made false and misleading statements to impede and obstruct IRS personnel who were seeking to collect accrued Trust Fund and Payroll Taxes, Trust Penalties, and personal income taxes.

55.    These statements included, among others:

a.    On or about November 13, 2002, November 27, 2002, and December 4, 2002, **BURGESS** falsely stated to an IRS representative that AES was making current payments of Trust Fund and Payroll Taxes, when in fact AES had not made a single such payment in the preceding nine months.

b.    On or about July 26, 2004, more than three years after the purchase of his

- 13 -

Princeton residence, **BURGESS** told an IRS representative that he did not own a home in New

Jersey and that he stayed with relatives in the area when not traveling back to Massachusetts on

the weekends.

    c.  On or about July 26, 2004, **BURGESS** stated to an IRS representative that

his family was supporting him and that he had taken no salary for three years, when in fact, the

Burgess Companies had paid **BURGESS** substantial income in the form of the Personal

Expenditures.

  In violation of Title 26, United States Code, Section 7212 and Title 18, United States

Code, Section 2.

- 14 -

## COUNTS 2 THROUGH 18
## FAILURE TO PAY OVER TRUST FUND AND PAYROLL TAXES
### 26 U.S.C. § 7202 & 18 U.S.C. § 2
### (Philip N. Burgess, Jr.)

1.      The allegations contained in paragraphs 1 and 3 through 55 of Count 1 are

realleged as if stated herein.

2.      On or about the filing dates set forth in the table below, in the District of New

Jersey, and elsewhere, defendant

### PHILIP N. BURGESS, JR.

being a person required by law to collect, account for, and pay over Trust Fund and Payroll Taxes

to the Internal Revenue Service, did knowingly and willfully fail to truthfully account for and pay

over such taxes, each constituting a separate count of this Indictment:

| Count | Business | Quarter Ending | Return Filed | Trust Fund and Payroll Taxes Owed | Trust Fund and Payroll Taxes Paid | Unpaid Taxes |
|-------|----------|----------------|--------------|-----------------------------------|-----------------------------------|--------------|
| 2 | AES | 03/31/01 | 11/21/01 | $252,265 | $0.00 | $252,265 |
| 3 | AES | 06/30/01 | 11/21/01 | $215,558 | $0.00 | $215,558 |
| 4 | AES | 09/30/01 | 11/21/01 | $236,213 | $0.00 | $236,213 |
| 5 | AES | 12/31/01 | 01/31/02 | $168,486 | $0.00 | $168,486 |
| 6 | AES | 03/31/02 | 04/30/02 | $168,526 | $0.00 | $168,526 |
| 7 | AES | 06/30/02 | 09/30/02 | $165,749 | $0.00 | $165,749 |
| 8 | AES | 09/30/02 | 10/31/02 | $189,258 | $0.00 | $189,258 |
| 9 | AES | 12/31/02 | 01/31/03 | $153,329 | $0.00 | $153,329 |
| 10 | BES | 03/31/03 | 04/30/03 | $199,305 | $48,000 | $151,305 |
| 11 | BES | 06/30/03 | 07/31/03 | $171,992 | $0.00 | $171,992 |
| 12 | BES | 09/30/03 | 10/31/03 | $184,200 | $0.00 | $184,200 |

| 13 | BES | 12/31/03 | 01/31/04 | $141,518 | $4,000 | $137,518 |
| 14 | BES | 03/31/04 | 04/30/04 | $182,647 | $0.00 | $182,647 |
| 15 | BES | 06/30/04 | 07/31/04 | $155,331 | $2,000 | $153,331 |
| 16 | BES | 09/30/04 | 10/31/04 | $179,328 | $0.00 | $179,328 |
| 17 | BES | 12/31/04 | 01/31/05 | $164,766 | $0.00 | $164,766 |
| 18 | BES | 03/31/05 | 04/30/05 | $170,380 | $144,419 | $25,960 |

In violation of Title 26, United States Code, Section 7202 and Title 18, United States

Code, Section 2.

### COUNTS 19 THROUGH 23
### EVASION OF INCOME TAX
### 26 U.S.C. § 7201 and 18 U.S.C. § 2
### (Philip N. Burgess, Jr.)

1.      The allegations contained in paragraphs 1 and 3 through 55 of Count 1 are

realleged as if stated herein.

2.      During the calendar years 2000 through 2004, inclusive, as a result of the Personal

Expenditures, **BURGESS** had and received taxable income from the Burgess Companies as set

forth in the table below.

3.      Upon said taxable income, there was owing to the United States an income tax of

approximately $367,000.

4.      Having received said income, **BURGESS** was required by law, following the

close of each calendar year in which he received income, to make an income tax return to the IRS

stating specifically the items of his income.

5.      For each calendar year from 2000 through 2004, inclusive **BURGESS** filed with

the IRS a U.S. Individual Income Tax Return, Form 1040.  The tax returns **BURGESS** filed were

false in that they failed to report any of the income that he had received during those years from

the Burgess Companies.

6.     On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

**PHILIP N. BURGESS, JR.**

did knowingly and willfully attempt to evade and defeat an income tax due and owing by him to the United States by signing, filing, and causing to be filed with the Internal Revenue Service a false and fraudulent U.S. Individual Income Tax Return, Form 1040, as described in paragraph 5 of these Counts, knowing it to be false and fraudulent as to material matters, as described in paragraph 5 of these Counts, each constituting a separate count of this Indictment:

| Count | Tax Year | Date Return Filed | Income Reported | Unreported Income |
|-------|----------|-------------------|-----------------|-------------------|
| 19 | 2000 | 11/06/01 | $0.00 | $371,702 |
| 20 | 2001 | 10/18/02 | $0.00 | $32,165 |
| 21 | 2002 | 11/17/03 | $0.00 | $129,449 |
| 22 | 2003 | 04/15/04 | $0.00 | $254,385 |
| 23 | 2004 | 10/17/05 | $0.00 | $220,909 |

In violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

**COUNTS 24 THROUGH 28**
**EVASION OF INCOME TAX**
**26 U.S.C. § 7201 and 18 U.S.C. § 2**
**(Stephen R. Parrish)**

1.      The allegations contained in paragraphs 1 and 3 through 55 of Count 1 are

realleged as if stated herein.

2.      At various times relevant to this Indictment, defendant **STEPHEN R.**

**PARRISH** ("**PARRISH**") worked for several of the Burgess Companies at offices located in

Princeton, New Jersey, where he reported directly to **BURGESS**.  **PARRISH**'s responsibilities

at the Burgess Companies included marketing, assessing mergers, acquisitions, and other

financial transactions, and structuring employee benefits, among other things.

3.      During the calendar years 2001 through 2005, inclusive, **PARRISH** had and

received taxable income from AES, AFAB, BES, and BRISTOL in the form of the Off the

Books Payments in the total approximate amount of $375,000.

4.      Upon said taxable income, there was owing to the United States an income tax of

at least approximately $115,000.

5.      Having received said income, **PARRISH** was required by law, following the

close of each calendar year in which he received income, to make an income tax return to the

IRS stating specifically the items of his income.

6.      For each calendar year from 2000 through 2005, inclusive, **PARRISH** and his

spouse filed with the IRS Joint U.S. Individual Income Tax Returns, Form 1040.  The tax

returns **PARRISH** filed were false in that they failed to report nearly all of the income that

**PARRISH** had received from AES, AFAB, BES, and BRISTOL.

- 19 -

7.      On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

**STEPHEN R. PARRISH**

did knowingly and willfully attempt to evade and defeat a substantial portion of the income tax due and owing by him to the United States by signing, filing and causing to be filed with the Internal Revenue Service a false and fraudulent U.S. Individual Income Tax Return, Form 1040, as described in paragraph 6 of these Counts, knowing it to be false and fraudulent as to material matters, as described in paragraph 6 of these Counts, each constituting a separate count of this Indictment:

| Count | Tax Year | Return Filed | Unreported Income |
|-------|----------|--------------|-------------------|
| 24 | 2001 | 04/15/02 | $119,346 |
| 25 | 2002 | 04/15/03 | $8,762 |
| 26 | 2003 | 04/15/04 | $76,187 |
| 27 | 2004 | 10/18/05 | $84,210 |
| 28 | 2005 | 10/18/06 | $88,699 |

In violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

The Grand Jury

A TRUE BILL

CHRISTOPHER J. CHRISTIE
United States Attorney

- 20 -

CASE NUMBER:

# United States District Court
## District of New Jersey

**UNITED STATES OF AMERICA**

v.

**PHILIP N. BURGESS, JR. and
STEPHEN R. PARRISH**

# INDICTMENT FOR

**26 U.S.C. §§ 7201, 7202 & 7212
18 U.S.C. § 2**

A True Bill,

_____

**CHRISTOPHER J. CHRISTIE**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

SETH B. KOSTO
*ASSISTANT U.S. ATTORNEY*
*(973) 645-2737*

USA-48AD 8
(Ed. 1/97)